UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

GABY FRAIFER,                                     Chapter 11
                                                  Case No.: 8:22-bk-02423-MGW

     Debtor

_____/

### NOTICE OF RULE 2004 EXAMINATION
***Documents are requested in lieu of appearance***

DISH NETWORK L.L.C. as creditor of GABY FRAIFER (the "Debtor"), through undersigned counsel, gives notice that **Gaby Fraifer** shall produce Documents, as defined and identified in **Exhibit "A"** of the attached on or before **Thursday, July 21, 2022** no later than **5:00 P.M. at Sequor Law, P.A., 1111 Brickell Avenue, Suite 1250, Miami, FL 33131.**

The examination is pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure and Local Rule 2004-1. The scope of the examination shall be as described in Bankruptcy Rule 2004. Pursuant to Local Rule 2004-1, no order shall be necessary.

Production: The examinee or your representatives, must provide the documents, electronically stored information, or objects described on the attached **Exhibit "A"** and must permit inspection, copying, testing, or sampling of the materials.

Dated: June 30, 2022                              Respectfully submitted,

SEQUOR LAW, P.A.

SEQUOR LAW, P.A.
1111 Brickell Avenue, Suite 1250
Miami, Florida 33131
Telephone: 305-372-8282
Facsimile: 305-372-8202
E-Mail: dcoyle@sequorlaw.com
E-mail: afinley@sequorlaw.com

By:    */s/ Amanda E. Finley*
Daniel M. Coyle
Florida Bar No. 55576
Amanda E. Finley
Florida Bar No. 100225

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via electronic filing using the CM/ECF system with the Clerk of the Court which sent e-mail notification of such filing to all CM/ECF participants in this case and via regular US mail to all participants who are not on the list to receive e-mail notice/service for this case as indicated on the service list on June 30, 2022.

*/s/ Amanda E. Finley*
Amanda E. Finley

## SERVICE LIST

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Amanda E Finley**    afinley@sequorlaw.com; ngonzalez@sequorlaw.com
- **Buddy D Ford**    Buddy@TampaEsq.com; Jonathan@tampaesq.com; Heather@tampaesq.com; Staci@tampaesq.com; Nicholle@tampaesq.com
- **Ruediger Mueller**    trustee@tcmius.com; crm11@trustesolutions.net
- **Nicole Peair**    Nicole.W.Peair@USdoj.gov
- **United States Trustee - TPA**    USTPRegion21.TP.ECF@USDOJ.GOV

**Manual Notice List**
- (No manual recipients)

## EXHIBIT A

## DEFINITIONS & INSTRUCTIONS

As used in this request, the following words shall have the following meanings:

1.      "4701 Hillsborough Property" means property consisting of houses, land and/or realty and shall include fractional interests and present and future interests, including, but not limited to the real property located at 4701 W. Hillsborough Ave., Tampa, Florida.

2.      "9641 Gulf Property" means property consisting of houses, land and/or realty and shall include fractional interests and present and future interests, including, but not limited to the real property located at 9641 Gulf Blvd., Treasure Island, Florida.

3.      "8085 Gulf Property" means property consisting of houses, land and/or realty and shall include fractional interests and present and future interests, including, but not limited to the real property located at 8085 W. Gulf Blvd. #101, Treasure Island, Florida.

4.      "Accounts" shall be construed in the broadest sense and shall include all bank and/or depository accounts, including, but not limited to any credit, checking, savings, demand deposit, investment, certificate of deposit, money market, interest bearing, brokerage, bond, stock or equity trading, credit card, digital currency, digital asset, cryptocurrency, line of credit, revolving, or loan account, in your name, or any other person(s) with an interest, whether direct or indirect, in which you or Gaby Fraifer are listed as an authorized signatory.

5.      "Asset" means anything tangible or intangible which has pecuniary value or could be exchanged for pecuniary value, including, but not limited to Funds, Investment Property, Personal Property, Real Property, Right to Payment, or oil, gas, or other minerals whether before extraction or constituting as-extracted collateral, fixtures, insurance refunds, good will, software, inventory, chattel paper, intangible property rights, instruments, securities, patents, copyrights, trademarks, trade names or other intellectual property rights, licenses or franchise rights and/or proceeds thereof.

6.      "Communication(s)" means any oral, written or electronic transmission of information, including, but not limited to, electronic mail (sent or received), conversations, meetings, discussions, telephone calls, telegrams, telecopies, telexes, seminars, conferences, text messages, notes, memoranda or ESI.

7.      "CHIPS" means the Clearing House Interbank Payment System, operated by the New York Clearing House Association.

8.      "Document" has the same meaning and scope as "documents or electronically stored information" within the meaning of Federal Rule of Civil Procedure 34(a)(1)(A).

9.      "Entity and/or Entities" refers to each of the following entities or individuals and extends to any entities bearing a name of similar variation, as well as to any instance in which the Entities are reflected as having any relation to the matters set forth in the "Document Requests":

A.      FRAIFER INVESTMENT;

B.      GTLF MADEIRA;

C.      GULF BRISAS;

D.      TELE-CENTER, INC;

E.      PLANET TELECOM, INC.

10.     "Equipment" means machinery, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and recordkeeping equipment, parts and tools, and any other item, device, or machinery, whether mechanical or electronic, used in the course of providing services or creating or manufacturing products for ultimate sale.

11.     "ESI" means electronically stored information, including, but not limited to e-mails, voice-mails, instant messages, text messages, documents, spreadsheets, databases, file fragments, metadata, digital images, and digital diagrams or any other electronically stored information which can be stored in any type of electronic media including, but not limited to, hard drives, thumb drives, computers, handheld devices, backup tapes, and optical disks. All ESI produced is requested to be produced in **native format**.

12.     "Fedwire" means the Federal Reserve's funds transfer system.

13.     "Fraifer Investment" means Fraifer Investment LLC, together with its parent company(ies), subsidiaries, affiliates, employees, executives, managers, agents acting within the scope of such agency, and any other entity or person over which it may have custody, control, or hold any position relating to same. Agents include but are not limited to employees, consultants, brokers, attorneys, representatives and any other person acting on its behalf.

14.     "Funds" means monies, cash or cash equivalents.

15.     "GTLF Madeira" means GTLF Madeira, LLC, together with its parent company(ies), subsidiaries, affiliates, employees, executives, managers, agents acting within the scope of such agency, and any other entity or person over which it may have custody, control, or hold any position relating to same. Agents include but are not limited to employees, consultants, brokers, attorneys, representatives and any other person acting on its behalf.

16.     "Gulf Brisas" means means Gulf Brisas, LLC, together with its parent company(ies), subsidiaries, affiliates, employees, executives, managers, agents acting within the scope of such agency, and any other entity or person over which it may have custody, control, or hold any position relating to same. Agents include but are not limited to employees, consultants, brokers, attorneys, representatives and any other person acting on its behalf.

17.     "Investment Property" means equity interests, stocks, bonds, certificated and uncertificated securities, government bonds, corporate bonds, bond funds, other negotiable and non-negotiable instruments, commodities or futures contracts, interests in general partnerships, limited partnerships, or joint ventures, options, rights of purchase, mutual funds, stock funds, or any other property constituting a "security" under the Securities Act of 1933, as amended, the Securities Exchange Act of 1934, as amended, or the Delaware Securities Act.

18.     "Inventory" means all inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, products or materials used or consumed in the course of providing services or products.

19.     "Longwater Property" means property consisting of houses, land and/or realty and shall include fractional interests and present and future interests, including, but not limited to the real property located at 4801 Longwater Way, Tampa, Florida.

20.     "Madeira Harbor Properties" means properties consisting of houses, land and/or realty and shall include fractional interests and present and future interests, including, but not limited to the real property located at Bill William's Madeira Harbor Sub. 1st Addition Lots 24 & 25, Bill William's Madeira Harbor Sub. 1st Addition Lots 26 & 27, Bill William's Madeira Harbor Sub. 1st Addition Lots 30 & 31.

21.     "Person(s)" means any natural person, corporate entity, partnership, association or sole proprietorship, including, but not limited to, You.

22.     "Personal Property" means tangible personal property, including, but not limited to, Inventory, Equipment, collectibles, office equipment, supplies, or office furniture, gemstones, gold, silver, or other precious stones or metals, firearms or other sports or hobby equipment, furs, jewelry, audio, video, photographic equipment, and computer equipment books, pictures, and other art objects, antiques, stamps, coins, records, tapes, compact discs, comic books, trading cards, memorabilia, electronics, or Vehicles.

23.     "Real Property" means property consisting of houses, land and/or realty and shall include, legal, equitable, fractional and present and future interests in real property, including, but not limited to the 9641 Gulf Property, 8085 Gulf Property, Madeira Harbor Properties, Longwater Property, and 4701 Hillsborough Property.

24.     The phrases "reflecting", "regarding", "related to" and "relating to" mean, without limitation, constituting, discussing, covering, concerning, comprising, containing, setting forth, showing, disclosing, describing, explaining, summarizing, or referring to, directly or indirectly in any way, the subject matter identified in a particular document request.

25.     "Relevant Period" refers to the period of time between January 1, 2016 and to the date of responding to this Subpoena. Your response to this Request.  Unless otherwise stated, all Requests refer only to the Relevant Period.

26.     "Securities" shall include any stocks, bonds or evidences of direct or indirect interests therein, mutual funds, commodity accounts, options or futures accounts, or any other property constituting a "security" under the Securities Act of 1933, as amended, the Securities Exchange Act of 1934, as amended or the Delaware Securities Act.

27.      "Source of Funds" shall mean the exact account that initiates a payment, including the name of the account holder, account number, bank name and bank address or routing number.

28.     "SWIFT" means the Society for Worldwide Interbank Financial Telecommunications.

29.     "Transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or with an interest in an asset, including a gift, grant,

alienation, bargain, sale, conveyance, lease, release, creation of lien or encumbrance, assignment, retention of title as a security interest, consignment, and bailments of any kind.

30.    "Vehicle" means any car, crossover, sedan, coupe, sport utility vehicle, SUV, motorcycles automobiles, trucks, vans, trailers, motorcycles, mopeds, bicycles, boats, yachts, airplanes or other conveyance.

31.    "You" and "Your" refer to the recipient of this discovery request.

32.    Whenever appropriate in this request for production of Documents, the singular form of a word shall be interpreted as its plural.

33.    The term "any" means "all" and vice versa.

34.    The terms "and" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this request for production of Documents any information that might otherwise be construed to be outside its scope.

35.    The term "including" means including but not limited to.

36.    As payment messages may not include the exact name of the Entities or Individuals, when searching for documents responsive to Document Request Nos. 8 and 9, please include payment messages or other Documents that include entities with names substantially similar to the names listed above.

37.    Together with any Documents produced in response to this Subpoena, please provide an affidavit or certification sufficient to identify such Documents as business records of a regularly conducted activity, as described in the Federal Rules of Evidence 803(6).

38.    These requests shall be deemed continuing to require You to reasonably supplement Your responsive production if You gain knowledge that Your response was incomplete.

## GENERAL PROVISIONS

1.    To the extent applicable to any documents produced in response to this Subpoena, please provide an affidavit or certification sufficient to identify such documents as records of a regularly conducted activity of a business, organization, or calling, as described in Federal Rules of Evidence, Rule 803(6).

2.    You are requested to produce all documents that are in Your possession, custody, or control, including, but not limited to, documents in the possession, custody or control of Your affiliates, attorneys, consultants, professionals, agents, representatives, employees, subsidiaries, sister corporations, parent corporations or any other person or entity acting on Your behalf.  You have the affirmative duty to contact any third party, including the foregoing, from whom You have "the legal right to obtain the documents requested upon demand."  Sergeeva v. Tripleton Int'l Ltd., 834 F.3d 1194, 1201 (11th Cir. 2016) (affirming order that U.S. company produce documents in the physical possession or custody of a foreign affiliate); SeaRock v. Stripling, 736 F.2d 650, 653–54 (11th Cir. 1984); In re Markus, 607 B.R. 379 (Bankr. S.D.N.Y. 2019).

3.      The documents produced pursuant to this Subpoena for production of documents are to be segregated and identified by the number of the request to which the documents are responsive.

4.      A Document is deemed to be within Your possession, custody or control if it is in the possession, custody or control (actual or constructive) of You, any entity owned by or in which You have an interest, or any of Your officers, directors, employees, representatives, agents, accountants, relatives, other fiduciaries or any other person or entity acting for or on behalf of You.

5.      If any Document requested herein was formerly in Your possession, custody or control and has been lost or destroyed, or otherwise disposed of, You are requested to submit, in lieu of any such Document, a written statement: (i) describing in detail the nature of the Document and its contents; (ii) identifying the person who prepared or authorized the Document, and if applicable, the person to whom the Document was sent, copied or blind copied; (iii) specifying the date on which the Document was prepared or transmitted; and (iv) specifying, if possible, the date on which the Document was lost or destroyed, and if destroyed, the conditions of and reason for such destruction and the person(s) requesting and/or performing the destruction.

6.      If any document request herein is withheld on the basis of any claim of privilege, You are requested to submit a list identifying each such Document by stating its date, its signatory or signatories, if signed, each person who participated in its preparation, the address or addresses of the person or persons by whom it was received, the present or last known location and custodian of the original of the document (or, if that is unavailable, the most legible copy thereof), and the basis for the witness's claim of privilege with respect thereto.

7.      This request is a continuing one so as to require You to reasonably supplement Your responsive production if You gain knowledge that Your response was incomplete.  Any document obtained subsequent to production which would have been produced had it been available or if its existence had been known at the time of production shall be produced forthwith.

8.      Where a Document is requested, the request includes Documents in the possession of the party, the party's predecessor in interest, agents, representatives, and, unless privileged, the party's attorney.

9.      To the extent that no single Document exists or is in Your possession, custody or control that contains all the information sought in any particular request, You are to provide such other Documents in Your possession, custody or control that are sufficient to show, compute, compile, or explain all the information sought in the request or as much information as is available.

10.     The Documents produced pursuant to this request for production of Documents are to be segregated and identified by the number of the request to which the Documents are responsive.

11.     If production of documents or other items required by this Subpoena would be, in whole or in part, unduly burdensome, or if the response to an individual request for production may be aided by clarification of the request, contact the issuer of this Subpoena, to discuss possible amendments or modifications of the Request within five (5) days of receipt of same.

12.     With respect to "ESI":

a.      ESI shall be produced on readily accessible electronic media, including, without limitation, CD-ROM, DVD, USB flash drive, external hard drive (with standard PC compatible interface), or such other media as may be agreed upon ("Production Media"). A unique identifying label shall be affixed to each piece of Production Media, which identifies the date of the production and the sequence of the material in that production. All Production Media shall be properly packaged to ensure safe shipping and handling.

b.      All spreadsheets (including, but not limited to, MS Excel files) or databases responsive to these Discovery Requests that are maintained in electronic format shall be produced in their native format along with the software necessary to interpret such files if such software is not readily available. A single Bates-numbered TIFF placeholder shall be provided for any data provided in native format. The TIFF placeholder shall state: "This document produced in native format, per DISH NETWORK L.L.C.'s request."

c.      All other documents responsive to these Discovery Requests that are maintained in electronic format shall be produced as properly unitized, multipage Group IV TIFF image files of at least 300 dpi, with page breaks at document end. You will produce color documents in color whenever possible. These image files will be produced complete with full text extracts and all associated metadata. The TIFF production shall be Bates-numbered and shall include accompanying load files and available metadata.

d.      All document productions will be provided with Relativity image and data load files. Each image load file must reference each TIFF file in the corresponding production, and the total number of TIFF files referenced in the load file must match the total number of image files in the production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the corresponding image load file for that production.

e.      Each document produced must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant length of seven numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, with no special characters or embedded spaces; and (4) be sequential within a given document. Each document must be branded with the corresponding Bates number using a consistent font type and size. Reasonable efforts must be taken to avoid obscuring any part of the underlying image with the Bates number.

f.      All documents responsive to these Discovery Requests shall be produced with the following metadata fields normally contained within such documents, regardless of whether the fields may be populated automatically from the native file or created using an automated process: (1) Begin Bates, (2) End Bates, (3) Begin Attachment, (4) End Attachment, (5) Native File Link (for ESI only), and (6) Custodian. In addition, the following metadata shall be produced concerning emails: (1) Date Sent, (2) To, (3) From, (4) CC, (5) BCC, (6) Subject, and (7) Full Text. For all other ESI, the following additional metadata shall also be produced: (1) File Name, (2) File Extension, and (3) Full Text. If this metadata is not available, each document shall be accompanied by a listing of all file properties relating

to such document, including, but not limited to, all information relating to the date(s) the document was last accessed, created, modified, or distributed, and the author(s) and recipient(s) of the document. Emails with attachment(s) will be produced with the email serving as the first "Bates"-numbered document in the series followed by each of the attachments thereto, accompanied by metadata fields such as those identifying the beginning and ending Bates number for the email, and beginning and ending Bates number for the attachment family.

g.      Under no circumstances should ESI be converted from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome to use. ESI should not be produced in a form that removes or significantly degrades the ability to search the ESI by electronic means where the ESI is ordinarily maintained in a way that makes it searchable by electronic means or which results in the loss of metadata. ESI shall be processed, to the extent practicable, in a manner that preserves all metadata, hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes, and comments. Databases or underlying data should not be produced without first discussing production format issues with DISH NETWORK L.L.C.'s counsel.

## **DOCUMENT REQUESTS**

1.      All Documents prepared, executed, or exchanged pursuant to the purchase and sale of any Real Property, including, but not limited to, the purchase and sale agreement, addenda, attachments, exhibits, riders, estoppels, condominium estoppel, lease, lien, mortgage documents, power of attorney, certificates, corporate resolution, title commitment, escrow letters, and closing statement, or any encumbrance on or of the Real Property, including, but not limited to, bank account statements, wire transfer instructions, deposit slips, and wire transfer confirmations.

2.      All Documents sufficient to identify the Source of Funds for payments to You[1] from any of the Entities and/or Gaby Fraifer including all cancelled checks (front and back), electronic funds transfer advices, account statements, wire transfer instructions, deposit slips, during the Relevant Period.

3.      All Documents reflecting any Assets owned by Gaby Fraifer and/or any Entity at any time during the Relevant Period.

4.      All other Documents related to any Transfers of any Assets by Gaby Fraifer and/or any Entity at any time during the Relevant Period.

5.      All Documents and Communications related to any Real Properties in which Gaby Fraifer and/or any Entity have held any interest during the Relevant Period.

---

[1] Payments to a law firm by a client are not privileged.  *See In re Grand Jury Matter No. 91-01386*, 969 F.2d 995 (11th Cir. 1992) (the receipt of attorney's fees is not subject to the attorney-client privilege); *see also Greenberg Traurig Hoffman Lipoff Rosen & Quentel v. Bolton*, 706 So. 2d 97 (Fla. 3d DCA 1998) (a law firm retained by a judgment debtor could be compelled to provide information and/or financial documents sought by judgment creditor regarding debtor's assets).

6.      For the Relevant Period, copies of all of the following Documents related to the Accounts:

      a.      account statements;

      b.      wire transfer, EFT, or ACH payment requests for payments in an amount greater than $500.00;

      c.      all wire transfers (direct, external and correspondent banking wires), EFT, or ACH payment confirmations, details, or receipts for payments in an amount greater than $500.00;

      d.      cancelled checks (front and back) in an amount greater than $500.00;

      e.      deposit slips or receipts for any amount greater than $500.00;

      f.      records reflecting the receipt or delivery of securities;

      g.      applications for credit, including Documentation attached to or provided in connection therewith;

      h.      credit reports;

      i.      signature cards;

      j.      account opening Documents, including, without limitation, Know Your Customer Documents; and

      k.      account closing Document

7.      For the Relevant Period, all other Documents and Communications related to the Accounts.

8.      All Documents related to any safe deposit boxes and/or security deposit boxes Gaby Fraifer and/or any Entity owned or used at any point during the Relevant Period.

9.      All Documents related to any security deposits with public utilities, telephone companies, landlords, and others that Gaby Fraifer and/or any Entity currently owns, or owned at any time within the Relevant Period.

10.     All Operating Agreements for each Entity.

11.     All Documents reflecting the members of each Entity.

12.     All Documents reflecting each distribution, dividend or disbursement of any of the Entities to or for the benefit of Gaby Fraifer during the Relevant Period.

13.     All other Documents and Communications related to any of the Entities' Operating Agreement(s), including its negotiation and execution and any amendments thereto.

14.     All other Documents related to Gaby Fraifer's ownership of any Entity.

15.     All Documents reflecting any contracts, agreements, business relationships, joint ventures or other arrangements between Gaby Fraifer and any Entity.

SEQUOR LAW, P.A.

16.     All Documents evidencing Gaby Fraifer's and/or Entity's accounts receivables, including, but not limited to, all Documents which provide a description of the nature of the receivable, the amount owed to Gaby Fraifer and/or Entity and the mailing address of the account debtor.

17.     All Documents related to any interest Gaby Fraifer and/or any Entity owned in insurance policies at any time during the Relevant Period.

18.     All Documents related to any annuities Gaby Fraifer and/or any Entity owned at any time during the Relevant Period.

19.     All Documents evidencing any interests in stocks of any corporations, mutual funds, or stock funds Gaby Fraifer and/or any Entity owned at any point during the Relevant Period.

20.     All Documents evidencing any interests in commodities or futures contracts Gaby Fraifer and/or any Entity owns, or owned.

21.     All Documents evidencing any interest in general partnerships, limited partnerships, or joint ventures Gaby Fraifer and/or any Entity owned by point during the Relevant Period.

22.     All Documents evidencing any government bonds, corporate bonds, bond funds, and other negotiable and non-negotiable instruments Gaby Fraifer and/or any Entity owned at any point during the Relevant Period.

23.     All Documents evidencing any alimony, maintenance, support, and property settlement payments due to Gaby Fraifer at any time during the Relevant Period.

24.     All Documents evidencing any tax refunds Gaby Fraifer and/or any Entity received or is currently entitled to receive.

25.     All Documents evidencing any monies due to Gaby Fraifer and/or any Entity under any will, death benefit plan, life insurance policy or trust, or decedent estate.

26.     All policies of life insurance, casualty insurance, and other insurance, owned by Gaby Fraifer, or in which Gaby Fraifer and/or any Entity is/are a beneficiary(ies) or hold(s) an interest, regardless of the insured or beneficiary or trustee, in force.  This request includes but is not limited to any policy of personal liability, including any umbrella policies.

27.     All Documents evidencing any lawsuits pending at any time during the Relevant Period in which Gaby Fraifer and/or any Entity was a plaintiff, counter-plaintiff, or sought money damages.

28.     All Documents evidencing any judgments for money damages rendered in favor of Gaby Fraifer and/or any Entity within the last twenty (20) years that are currently unpaid or were unpaid.

29.     All Documents evidencing any patents, copyrights, trademarks, trade names or other intellectual property rights Gaby Fraifer and/or any Entity owned at any point during the Relevant Period.

30.     All Documents evidencing any licenses or franchise rights Gaby Fraifer and/or any Entity owned at any point during the Relevant Period.

31.     Complete un-redacted tax returns of Gaby Fraifer and each Entity, with all corresponding schedules and attachments for every year during the Relevant Period.

32.    All wills under which Gaby Fraifer and/or any Entity is a beneficiary.

33.    All financial statements, balance sheets, accounts receivable and payable ledgers, net worth statements, income statements, working capital statements, cash flow statements or any other financial matters of each and any business in which Gaby Fraifer and/or any Entity has ever been an officer, director, manager or agent at any point during the Relevant Period.

34.    All Documents sufficient to establish Gaby Fraifer's annual gross revenue and net income for the Relevant Period, including, but not limited to, passive income, dividends, distribution, rents, proceeds or other monies from any equity and/or ownership interests Gaby Fraifer had in any entities at any point during the Relevant Period.

35.    All Documents sufficient to establish each Entity's annual gross revenue, including, but not limited to, passive income, dividends, distribution, rents, proceeds or other monies from any equity and/or ownership interests such Entity has or had in any entities.

36.    All Documents sufficient to establish the amount of each Entity's net income, the nature of any deductions from each Entity's gross revenue, and the frequency or payment schedule under which such Entity receives such income.

37.    All contracts to which Gaby Fraifer and/or any Entity, is/are a party and is now or anticipates performing services or rendering materials, and/or upon which someone or some entity is indebted to Gaby Fraifer and/or any Entity for services or materials furnished.

38.    All Documents related to any trusts in which Gaby Fraifer and/or any Entity has ever been a grantor, beneficiary, or trustee at any point during the Relevant Period.

39.    All other Documents related to any limited liability company in which Gaby Fraifer and/or any Entity has ever held an interest at any point during the Relevant Period, including, but not limited to, all financial statements, generated, all balance sheets generated, all income statements generated, all equity statements generated, all cash flow statements generated, tax returns generated, all records of any interest held by Gaby Fraifer any/or Entity in such limited liability company or property held by it as trustee, all copies of member interests, all Operating Agreements, other governing Documents and amendments thereto generated from the inception of the business to the present.

40.    All other Documents related to any corporation in which Gaby Fraifer and/or any Entity has ever held an interest at any point during the Relevant Period, including, but not limited to, all financial statements, generated, all balance sheets generated, all income statements generated, all equity statements generated, all cash flow statements generated, tax returns generated, all records of any shares owned, all records of any interest any person held in such corporation, all copies of stock certificates, all shares, all corporate bylaws, governing Documents and amendments thereto generated from the inception of the business to the present.

41.    All other Documents related to any partnership in which Gaby Fraifer and/or any Entity has ever held an interest at any point during the Relevant Period, including, but not limited to, all financial statements, generated, all balance sheets generated, all income statements generated, all equity statements generated, all cash flow statements generated at any time during Relevant Period, tax returns generated, all records of any partnership interest owned, all records of any interest any person held in such corporation, all copies of certificates, all partnership agreements, governing Documents and amendments thereto generated from the inception of the business to the present.

SEQUOR LAW, P.A.

42.     All Documents, related to any loans owed to Gaby Fraifer and/or any Entity.

43.     All Documents, related to any and all monies which may be due to Gaby Fraifer and/or any Entity, together with any records which show the names, addresses, and any other contact information for persons or entities owing money or who will owe money to Gaby Fraifer and/or any Entity.

44.     All promissory notes, security agreements, loan agreements, pledges and mortgages naming Gaby Fraifer as payee, or upon which Gaby Fraifer now receives payments, or did receive any payments or should be receiving payments.

45.     All other Documents related to any Funds paid, disbursed, distributed or transferred to Gaby Fraifer at any time during the Relevant Period, whether related to settlement of a dispute, payment on a debt, payment on a judgment, award by a Court or arbitral body, compensation for labor, purchase of goods, sale of assets, return on an investment and/or profit from a business or business venture.

46.     All Documents related to any interest Faraj Fraifer has in Gaby Fraifer's membership interests of Fraifer Investment, including, but not limited to, promissory notes, security agreements, loan agreements, pledges mortgages, Documents establishing proof of funding of any loan, Documents related to the use of any loan proceeds, and membership interest certificates.

47.     All Documents related to any interest Faraj Fraifer has in Gaby Fraifer's membership interests of GTLF Madeira, including, but not limited to, promissory notes, security agreements, loan agreements, pledges mortgages, Documents establishing proof of funding of any loan, Documents related to the use of any loan proceeds, and membership interest certificates.

48.     All other Documents related to any loans owed by Gaby Fraifer and/or any Entity.

SEQUOR LAW, P.A.